UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  No. CR 21-1723-MV

GIOVANNI REYES,

    Defendant.

**MEMORANDUM IN SUPPORT OF ORDER GRANTING DEFENDANT'S APPEAL OF DENIAL OF RELEASE PENDING SENTENCING**

THIS MATTER is before the Court on Mr. Reyes's Appeal of Detention Order Pending Sentencing. Doc. 49. The government filed a response [Doc. 54] and Mr. Reyes filed a reply [Doc. 56]. The Court held a hearing on December 19, 2023 and filed an order granting Mr. Reyes's Appeal of Order of Detention Pending Sentencing. Doc. 61. The following memorandum accompanies the Court's Order.

**PROCEDURAL HISTORY**

On November 17, 2021, Giovanni Reyes was charged in the District of New Mexico in a one-count Indictment with Possession with Intent to Distribute 40 Grams and More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Doc. 2. Mr. Reyes was arrested in the District of Arizona on December 8, 2021. Doc. 49 at 1. On December 14, 2021, Mr. Reyes was released subject to conditions by the District Court for the District of Arizona. Doc. 7. On December 23, 2021, the District Court for the District of New Mexico adopted the conditions of release set in the District of Arizona. Doc. 12.

1

On November 27, 2023, Mr. Reyes pled guilty before Magistrate Judge Jennifer M. Rozzoni to a one-count Information charging him with Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Doc. 47. At the end of the plea hearing, Mr. Reyes's counsel argued for continued release pending sentencing, citing his mother's numerous health problems and the need for Mr. Reyes to continue caring for her. Doc. 60 at 20:21–23:1. The government deferred to the Court's discretion on whether Mr. Reyes should be released pending sentencing. *Id.* at 23:6–8. Judge Rozzoni found that there were no exceptional circumstances and ordered that Mr. Reyes be detained pending sentencing. *Id.* at 24:14–15. Mr. Reyes appealed the order of detention. Doc. 49.

## BACKGROUND

Mr. Reyes, age 26, is a lifelong resident of Arizona. Since 2018, he has been living with his sister, Paulina Reyes, and his mother, Alma Valencia, in Tucson, Arizona. Doc. 8 at 3. He has three minor children from two previous relationships, with whom he stays in frequent contact. *Id.* He has several criminal convictions, including one federal felony conviction for Conspiracy to Possess with Intent to Distribute and several misdemeanor convictions that occurred when he was a juvenile. *Id.* at 4.

Since his release in December of 2021, Mr. Reyes has resided with his mother and his sister. Doc. 49 at 2. He has maintained gainful employment at the Target Warehouse and is enrolled in classes to obtain his Commercial Driver's License. Doc. 43. Other than two instances in which Mr. Reyes tested positive for marijuana, he has complied with all conditions of release. *Id.* At his plea hearing, the probation officer reported to the Court that "he's done well" while on release and had no other positive drug tests. Doc. 60 at 23:15–16.

Mr. Reyes's mother suffers from several serious medical conditions and requires constant care. Doc. 49 at 2. She has been diagnosed with acute Chronic Obstructive Pulmonary Disease (COPD) and pulmonary embolism, both of which require that Ms. Valencia use an oxygen tank. *Id.* Ms. Valencia requires assistance in switching out her oxygen tanks to ensure that she receives the appropriate amount of oxygen. *Id.* In addition to these already debilitating medical conditions, Ms. Valencia is also being evaluated for Parkinson's Disease as her hands and legs tremble uncontrollably and prevent her from performing everyday tasks, such as cooking and bathing. *Id.* She also suffers from a chronic infection in her left knee, which has required 13 surgeries. *Id.* As a result, she must go to biweekly medical appointments and her doctors have represented that she may need to have her leg partially amputated. *Id.* Since Mr. Reyes has been in custody, Ms. Valencia suffered one fall due to her poor mobility. Doc. 62 at 2.

For the past several years, both Mr. Reyes and his sister Pauline have been caring for their mother, helping her complete basic tasks such as getting out of bed, walking, bathing, getting dressed, and eating. Doc. 49 at 2. Mr. Reyes's employer, through the Family Medical Leave Act (FMLA), granted Mr. Reyes the ability to work only on Saturdays, Sundays, and Mondays, so that he would be able to care for his mother from Tuesday through Friday. *Id.*; Doc. 49–Exhibit B. Mr. Reyes has also been responsible for taking Ms. Valencia to all of her medical appointments. Doc. 62 at 2. Pauline works as a dental assistant from Tuesday through Friday and cares for Ms. Valencia on the days that Mr. Reyes works. *Id.* While Mr. Reyes has been in custody, his sister has been forced to leave Ms. Valencia unattended when she goes to work and Ms. Valencia's testing for Parkinson's Disease has been put on hold. *Id.*

**LEGAL STANDARD**

Under the Mandatory Detention Act of 1990, defendants who are found guilty of certain categories of offenses must be detained pending sentencing, with three exceptions. 18 U.S.C. § 3143(a)(2). First, a defendant may be released if "the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted." 18 U.S.C. § 3143(a)(2)(A)(i). Second, a defendant may be released if "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person." 18 U.S.C. § 3143(a)(2)(A)(ii). Lastly, "a person subject to detention pursuant to section 3143(a)(2) . . . and who meets the conditions of release set forth in section 3143(a)(1) [not likely to flee or pose a danger to the community], may be ordered released . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

"[E]xceptional means clearly out of the ordinary, uncommon, or rare." *United States v. Mutte,* 383 F. App'x 716, 718 (10th Cir. 2010) (quoting *United States v. Little,* 485 F.3d 1210, 1211 (8th Cir. 2007). Courts must in engage in a "case by case" evaluation, *Mutte,* 383 F. App'x at 718, to determine whether there exists "a unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. DiSomma,* 951 F.2d 494, 497 (2d Cir. 1991). "The district court has broad discretion . . . to consider all the particular circumstances of the case before it and draw upon its broad experience with the mainsprings of human conduct." *Mutte,* 383 F. App'x (quoting *United States v. Garcia,* 340 F.3d 1013, 1018 (9th Cir. 2003)).

The Tenth Circuit has noted that "[a] wide range of factors may bear upon the analysis," but has not specifically defined the relevant factors. *Id.* (quoting *Garcia,* 340 F.3d at 1018). Other courts have listed a number of nonexclusive factors that district courts should consider, including: (1) whether detention imposes an unusually harsh effect of a personal nature not typically

experienced by an individual facing incarceration; (2) whether a defendant was unusually cooperative with the government; (3) whether the defendant's low culpability is likely to reduce the sentence; (3) whether a defendant's appeal presents a novel legal question; and (4) whether the defendant is extremely unlikely to engage in recidivist behavior while on release. *See, e.g. Garcia,* 340 F.3d at 1018–20 ("The district court may consider circumstances that would render the hardships of prison unusually harsh for a particular defendant."); *United States v. Green,* 250 F. Supp. 2d 1145, 1150 (E.D. Mo. 2003) (noting that courts should consider whether the defendant will receive a short sentence, whether the appeal presents a novel legal question, and whether the defendant is likely to engage in criminal behavior while on release); *United States v. Carretero,* No. 98CR418TJM, 1999 WL 1034508 (N.D.N.Y. Nov. 4, 1999) (denying release but stating that active cooperation with the government could constitute an exceptional circumstance). Of course, this is not an exhaustive or binding list, and the question is ultimately "whether, due to any truly unusual factors or combination of factors . . . it would be unreasonable to incarcerate the defendant" pending sentencing. *Mutte,* 383 F. App'x at 718.

With regard to the personal circumstances of defendants who appeal their detention, some courts have refused to consider family circumstances on their own as "exceptional reasons" for release. *See, e.g., United States v. Clark,* No. 2:02CR10104, 2003 WL 60478, at *2 (W.D. Va. Jan. 7, 2003) ("Family and job responsibilities are unfortunately common, rather than unique, circumstances of convicted drug traffickers."). For instance, in *United States v. Wages,* the Tenth Circuit found that no exceptional circumstances warranted release pending sentencing where a defendant convicted on child pornography charges had no prior criminal record, used a wheelchair, had a limited ability to hear, and needed to care for his elderly mother. 271 F. App'x 726, 727 (10th Cir. 2008) (unpublished).

On the other hand, some courts have found exceptional circumstances where the personal hardship to the defendant goes beyond the difficulties typically presented by incarceration. *See, e.g., United States v. Franklin,* 843 F. Supp. 2d 620, 623 (W.D.N.C. 2012) (finding that exceptional circumstances warranted release where defendant's son suffered from Tourette's Disorder, the defendant's wife was unable to care for the son, and the government agreed there were exceptional circumstances); *United States v. Porter,* No. 21-CR-190S, 2022 WL 2286323, at *2 (W.D.N.Y. June 24, 2022) (ordering temporary release of defendant pending sentencing so that she could attend her mother's funeral); *United States v. Williams,* 903 F. Supp. 292, 302 (M.D. Pa. 2012) (exceptional circumstances existed where the defendant's wife was in immediate need of surgery and without the defendant's income, the family would become homeless); *United States v. Montano,* No. CR 17-566 MV, (D.N.M. March 6, 2017) (exceptional circumstances existed where defendant was sole caretaker for his wife who suffered from Parkinson's disease); *United States v. Begay,* No. CR 15-4085 MV, (D.N.M. Oct. 26, 2016) (granting appeal of detention where defendant's family had lost their housing after defendant was detained).

## DISCUSSION

In the instant case, the government agrees that Mr. Reyes does not currently pose a flight risk or danger to the community. Doc. 54 at 3. The sole issue this Court must consider is whether exceptional circumstances warrant Mr. Reyes's release pending sentencing. Mr. Reyes has clearly shown that exceptional circumstances exist such that his continued detention would be inappropriate. Doc. 61.

The government contends that Mr. Reyes has not shown exceptional circumstances, relying on the Tenth Circuit's decision in *Wages* to support its conclusion that, generally, "the need to care for an elderly or infirm mother is insufficient to show 'exceptional circumstances.'" Doc. 54 at 4

6

(quoting *United States v. Wright,* No. 2:07-CR-46 TS, 2009 WL 87604, at *3 (D. Utah Jan. 12, 2009). However, instead of applying general standards, district courts must engage in a case-by-case analysis, looking to the specific circumstances of each defendant. *Mutte,* 383 F. App'x at 718; *see also Garcia,* 340 F.3d at 1018 (district courts should look at the "particular circumstances" of each case).

Unlike in *Wages,* this is not just a case of general concern for the health of a family member. Instead, Mr. Reyes has specifically shown that he must engage in daily caretaking duties without which his mother may not survive. Mr. Reyes is one of the only two primary caretakers of his mother. Ms. Valencia struggles not only with COPD and pulmonary embolism, serious diseases which require that she use an oxygen tank, but she also experiences constant trembling in her hands and feet and is set to be tested for Parkinson's disease. Beyond these grave illnesses, Ms. Valencia also suffers from a chronic knee infection and her doctors have informed her that her leg may need to be amputated. Ms. Valencia cannot bathe, eat, or get out of bed without assistance. Without Mr. Reyes's help, his sister is forced to leave Ms. Valencia alone from Tuesday through Friday, leaving her vulnerable to falls and incapable of attending to her daily needs. Since Mr. Reyes has been in custody, Ms. Valencia has not been able to attend any medical appointments and has suffered one fall due to her poor mobility. Given the significant risk to Ms. Valencia's health and Mr. Reyes's critical caretaking role, "it would be unreasonable to incarcerate" Mr. Reyes pending sentencing. *Mutte,* 383 F. App'x at 718; *see also Franklin,* 843 F. Supp. 2d at 623; *Porter,* 2022 WL 2286323; *Williams,* 903 F. Supp. at 302.

Although the Court finds that Mr. Reyes's case meets the standard for exceptional circumstances as required by the Mandatory Detention Act of 1990, the Court notes the troubling history of this legislation and the case law that has developed since its enactment. The Mandatory

7

Detention Act of 1990 was passed by Congress as part of the comprehensive Crime Control Act of 1990. Pub. L. 101-647. The Mandatory Detention for Offenders Conviction of Serious Crimes Act was first introduced by Senator Paul Simon in 1989. 135 Cong. Rec. S15201–02, S15202, 1989 WL 188196 (Nov. 7, 1989). Senator Simon, in a move reflective of the tough-on-crime policies of the time, stated that "[t]here is simply no reason that an individual convicted of a violent crime or serious drug trafficking offense should be back on the street. This legislation would ensure that dangerous individuals are kept where they belong, in prison." 135 CONG. REC. S7,511 (June 23, 1989) (statement of Sen. Simon), *cited in* Jonathan S. Rosen, *An Examination of the "Exceptional Reasons" Jurisprudence of the Mandatory Detention Act: Title 18 U.S.C. §§ 3143, 3145(C),* 19 Vt. L. Rev. 19 (1994). Thus, "the intent of the bill was clearly to limit judicial discretion in the case of convicted drug traffickers or violent criminals." *Green,* 250 F. Supp. 2d at 1148.

In this context, many courts have interpreted the "exceptional circumstances" clause to exclude "merely personal reasons, including caring for a family or gainful employment" because most, if not all, defendants have family and job responsibilities that make incarceration difficult. *See, e.g., Clark,* 2003 WL 60478; *United States v. Lippold,* 175 F. Supp. 2d 537, 540 (S.D.N.Y. 2001) (noting that personal family hardships are not uncommon); *United States v. Burnett,* 76 F. Supp. 2d 846, 849 (E.D. Tenn. 1999) ("Incarceration regrettably inflicts family hardship on many, if not most defendants who appear before this Court."). However, the legal and social landscape has changed dramatically since the enactment of the Mandatory Detention Act of 1990, allowing for more judicial discretion to address the individualized needs of each defendant. For instance, recognizing the need to avoid both unwarranted sentencing disparities and "*maintain sufficient flexibility to permit individualized sentences,*" the Supreme Court in *United States v. Booker* held

8

that the Sentencing Guidelines were advisory rather than mandatory. 543 U.S. 220, 264 (2005) (emphasis added). The expansion of the availability of safety-valve relief for defendants facing mandatory minimums also reflects a push towards individualized treatment of defendants and expanded judicial discretion. *See, e.g.,* United States Sentencing Commission, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, 346, 355-56 (2011) (noting that mandatory minimums disregard "the possibility that mitigating circumstances surrounding the offense or the offender may justify a lower sentence"). Most notably, the United States Sentencing Commission recently announced several amendments to the Sentencing Guidelines, which took effect on November 1, 2023.  One of the amendments expanded the list of extraordinary and compelling reasons for a sentence reduction under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The Commission expanded the existing provisions under which district courts may grant petitions for compassionate release to include cases "in which a defendant's parent is incapacitated and the defendant would be the only available caregiver." 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, at 3. The Commission wrote that "this provision recognizes the diversity of family structures in America, and the caretaking needs within all of those family structures may give rise to equally extraordinary and compelling circumstances." *Id.* at 4.

      Given the significant changes in the legal landscape since the enactment of the Mandatory Detention Act of 1990, the Court finds that the meaning and applicability of the "exceptional circumstances" clause is ripe for reconsideration. As noted in *Mutte,* district courts routinely deal with the "mainsprings of human conduct."  Accordingly, they are in the unique position to recognize the need for the law to reflect the character and values of the people who appear before them. As this Court noted in the hearing on this matter, the way in which society treats its elders

is reflective of the character of that society. Elders are not disposable. And for many within our multicultural society, the idea of putting elderly parents in a home or having strangers take care of them is unacceptable. Indeed, the Sentencing Commission itself has recognized the need to adapt to the diversity of family structures in this country and the caretaking needs of different families. 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, at 3. Instead of routinely and callously discarding appeals because incarceration creates hardships for all families, district courts must closely evaluate each case to determine whether exceptional circumstances exist that would render the continued detention of the individual defendant "unreasonable." *Mutte,* 383 F. App'x at 718; *see also Franklin,* 843 F. Supp. 2d at 623; *Porter,* 2022 WL 2286323; *Williams,* 903 F. Supp. at 302. As noted above, it is hard to imagine a situation more exceptional than that of Mr. Reyes, where the very life of his mother is at stake.

## CONCLUSION

The Court finds that exceptional circumstances exist that warrant Mr. Reyes's release pending sentencing, pursuant to 18 U.S.C. § 3145(c). Consistent with this memorandum, this Court ordered Mr. Reyes's release on December 19, 2023. Doc. 61.

ENTERED this 5th day of January 2024.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE